IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TALLIE A. HOFFMAN,                )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   Civil Action No. 14-1760
                                  )
CAROLYN W. COLVIN, ACTING         )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
        Defendant.                )

O R D E R

AND NOW, this 24th day of November, 2015, upon consideration of Plaintiff's Motion for Summary Judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to base his assessment of Plaintiff's residual functional capacity ("RFC") on substantial evidence by

improperly evaluating certain medical opinions; (2) failing to base Plaintiff's credibility determination on substantial evidence; and (3) failing to base his Step 5 determination on substantial evidence by posing an incomplete hypothetical question to the Vocational Expert ("VE"). The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

As to the first issue, the Court finds no merit in Plaintiff's contention regarding the ALJ's decision not to give controlling weight to the opinion rendered by treating physician Danny Palmieri, M.D., from January, 2011. It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

The Court finds that the ALJ did not, as Plaintiff alleges, substitute his own lay judgment for the judgment of Dr. Palmieri in formulating Plaintiff's RFC. (R. 401-08). Rather, the ALJ fulfilled his duty as fact-finder to evaluate Dr. Palmieri's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. § 416.927. In fact, the ALJ specified that he was giving Dr. Palmieri's opinion "some weight," but he explained that the adopted RFC instead limits Plaintiff to sitting for 6 hours, with a sit or stand option (every 30 minutes), rather than the 4 hours of sitting and 4 hours of standing/walking suggested by Dr. Palmieri. (R. 610, 643). The ALJ further stated that "[l]ittle weight" was given to Dr. Palmieri's opinion as to the limitations on Plaintiff's use of her hands and upper extremities because those limitations are "unsupported in the evidence," which included, as he had previously explained in his review of the medical evidence, evidence that "upper EMG testing has been normal (B9F/21, C14F/12) and testing has shown no deficits in grip strength. (Ex C10F/3)." (R. 643). The ALJ also explained that he was giving "[l]ittle weight" to Dr. Palmieri's opinion that Plaintiff "would miss 3 to 4 days of work per month, as this speculative assessment is unsupported in the evidentiary record, and the physician failed to explain the basis for his conclusion." (R. 643).

Moreover, the opinion of Dr. Palmieri at issue here consists of a "Residual Functional Capacity Questionnaire" that was simply filled out by the doctor. (R. 610-11). The form largely consists of options to circle or check and blanks to be filled in by hand. The Court of Appeals

for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Thus, the Court notes that, to a certain degree, Dr. Palmieri's opinion lacks significant discussion, explanation or details to justify his statements contained therein. Regardless, the Court finds, however, that the ALJ sufficiently explained his reasons for giving the various parts of Dr. Palmieri's opinion less than controlling weight.

Plaintiff also appears to contend that the ALJ erred because the medical opinion from consultative examiner Ryon Hurh, M.D., from November, 2009, supported Dr. Palmieri's opinion, but was likewise given insufficient weight. (R. 401-08). However, in his determination, the ALJ explained that he was giving Dr. Hurh's opinion "significant weight" because it is supported by his examination findings and the objective evidence of record. (R. 642). Once again, the ALJ's RFC instead simply limits Plaintiff to sitting for 6 hours with a sit or stand option every 30 minutes, rather than 4 hours of sitting and 4 hours of standing and walking suggested by Dr. Hurh. (R. 405, 642). The ALJ further explained that he was imposing no limitations on reaching, noting that Dr. Hurh imposed such limitations based upon Plaintiff's subjective complaints (which the ALJ had deemed not sufficiently credible). (R. 642-43). Also, although Dr. Hurh indicated in his form's check-off boxes that Plaintiff had some limitation in upper and lower extremity pushing and pulling, he did not indicate the nature or degree of such limitations. (R. 405). Nevertheless, the ALJ noted that, in the adopted RFC, he assessed limitations in pushing and pulling based upon the evidence of record. (R. 643). Therefore, the Court finds that the ALJ sufficiently explained his reasons for determining the weight to be given to Dr. Hurh's opinion.

Finally, the ALJ also considered the opinion of consultative examiner Daniel G. Christo, D.O., in formulating Plaintiff's RFC. (R. 1391-98). In his determination, the ALJ pointed out that Dr. Christo's opinion, from August, 2011, found Plaintiff to be "capable of lifting and carrying 20 pounds with no other limitations." (R. 643). The ALJ gave Dr. Christo's opinion "significant weight," noting that that opinion "is supported by his examination findings showing good results from [Plaintiff's] cervical surgery, and no significant findings of lumbar degenerative disc disease." (R. 643). Ultimately, however, the ALJ found that Plaintiff had further limitations than Dr. Christo provided. (R. 638-39).

Accordingly, the Court finds that the ALJ properly discharged his duty to discuss Dr. Palmieri's opinion, as well as the other opinions addressing Plaintiff's physical impairments that were presented in the record. The Court finds that substantial evidence supports the ALJ's evaluation of that opinion evidence and his decisions as to the weight he gave to those opinions in making his ultimate determination.

Moreover, Plaintiff also contends that the ALJ did not properly weigh the opinion of consultative psychological examiner Tod R. Marion, Ph.D., in formulating Plaintiff's RFC and, thus, that he did not properly evaluate Plaintiff's psychological impairments. (R. 1383-90). In fact, the ALJ gave "significant weight" to Dr. Marion's opinion of no more than moderate limitations in Plaintiff's mental functioning, "as it is supported by his mental status evaluation as well as the other mental status findings of record." (R. 644). The ALJ explained that he gave

3

"little weight" to Dr. Marion's GAF score of 50, however, because the doctor offered no explanation or basis of support, and it was "inconsistent with his examination and assessment of moderate mental limitations." (R. 644). The ALJ also gave "little weight" to Dr. Marion's assessment of July 28, 2011, because it "is not supported by the medical evidence and is inconsistent with the opinion he included in his examination report." (R. 644). Specifically, the record actually contains two forms from Dr. Marion: one form is dated July 28, 2011 (the date when he examined Plaintiff), and another form is dated July 29, 2011 (the day after that examination). (R. 1385-86, 1388-90). Because the two forms differ significantly as to Dr. Marion's assessment of Plaintiff's limitations, the Social Security Administration apparently requested clarification from the doctor as to which opinion is correct. (R. 1399). In response, Dr. Marion indicated that the second form "is more accurate and should be given greater weight." (R. 1399). Therefore, the Court notes that the ALJ acted reasonably in discounting Dr. Marion's earlier, more restrictive assessment of Plaintiff and in relying instead on the second statement.

Plaintiff further contends that the ALJ should not have afforded significant weight to the opinion of state agency reviewing psychologist Melissa Diorio, Psy.D. In September, 2011, Dr. Diorio examined Plaintiff's records, noted her impairments and her activities of daily living, and found that Plaintiff has no more than moderate mental impairment and that she could perform light exertion work. (R. 644, 764-76). The ALJ stated that he also gave Dr. Diorio's opinion "significant weight, as it is supported by the mental status evaluations and the claimant's active range of daily activities." (R. 644). Although Plaintiff would prefer that the Court disregard Dr. Diorio's opinion, the Court of Appeals for the Third Circuit has stated that, in making an RFC determination, an ALJ may give more weight to a non-examining professional's opinion if that opinion is better supported by the record. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of a non-examining state agency reviewing psychologist, rather than the opinions of a treating physician and a consultative examiner). As in Salerno, the record here establishes that the ALJ was likewise entitled to give more weight to the state agency examiner's opinion than to that of a consultative examiner, and the Court finds that substantial evidence supports the ALJ's decision to give significant weight to the opinion of Dr. Diorio.

Thus, upon review, the Court finds that the ALJ properly discharged his duty to address not just Dr. Palmieri's opinion, or Dr. Marion's opinion, but also the other opinions presented in the record. Throughout his decision, the ALJ clearly considered all the relevant evidence in the record, provided discussion of the evidence to support his evaluation, and ultimately concluded that certain opinions of record were not supported by the evidence as a whole. Thus, the Court finds that substantial evidence supports the ALJ's evaluation of the various opinions presented and his decisions as to the weight he gave to those opinions in making his ultimate determinations regarding Plaintiff's RFC.

Plaintiff's second basis for her argument is her claim that the ALJ erred in evaluating her credibility. In support of this claim, Plaintiff contends, in essence, that the ALJ misconstrued the evidence of record. The Court finds, however, that the ALJ did in fact properly address the

evidence presented in finding Plaintiff's statements regarding her limitations to be not entirely credible.

In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms, including allegations of pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 416.929(a). A claimant's subjective complaints of pain and other symptoms alone are not sufficient to establish disability. See 20 C.F.R. § 416.929(a). In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or symptoms she alleges. See 20 C.F.R. § 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit her ability to work. See 20 C.F.R. § 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment).

In his decision, the ALJ discussed, at significant length, Plaintiff's medical treatment and Plaintiff's own statements in connection with her alleged impairments. The ALJ found that Plaintiff has a number of severe impairments, including the residual effects of a cervical fusion at C6-7, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, headaches, obesity, major depressive disorder, dysthymic disorder, anxiety disorder, post-traumatic stress disorder, adjustment disorder with mixed depression and anxiety, and history of substance abuse. (R. 636). However, upon review of all the evidence of record, the ALJ ultimately found that the evidence as a whole simply does not support the extreme limitations Plaintiff alleges.

For example, the ALJ stated that, while Plaintiff alleges disabling mental and physical limitations, the record shows that Plaintiff "has attributed her inability to work to conflicts with her children's schedules, one of whom receives SSI benefits for mental impairment, her history of legal problems, and not feeling like going to work." (R. 640). The ALJ also noted that the record shows that Plaintiff "has stopped working not for reasons related to her alleged disability, but due to transportation and child care problems." (R. 640). The ALJ further commented that Plaintiff had completed a medical assistant training program in October, 2010, which was a 10-month course that she attended for 4 hours each day, 5 days each week. (R. 640). Moreover, as part of an employment plan entered into with the Office of Vocational Rehabilitation in August, 2013, Plaintiff "agreed to actively search for work with a goal of obtaining employment by August 2014." (R. 640).

Additionally, the ALJ noted that "[p]ain management records further diminish the credibility of [Plaintiff's] pain complaints." (R. 640). The ALJ stated that Ohio Valley General Hospital pain management physician Dr. Kailash denied Plaintiff's "request for pain medication for neck pain complaints after a urine drug screen was positive for marijuana, and advised her to engage in physical therapy, epidural injections or to return for treatment with her surgeon," and that, in October, 2012, Dr. Kailash discontinued his treatment of Plaintiff because she failed to follow his recommendations. (R. 640). The ALJ also commented, "[n]otably, when [Plaintiff] initiated pain management treatment with Dr. LoDico in June 2013, she informed him that she

5

received no follow up at Ohio Valley after one visit due to distance, and denied using marijuana since high school." (R. 640).

The ALJ also stated that, contrary to Plaintiff's testimony and allegations of disabling orthopedic pain, she "has reported that she alleviates her pain by watching television and playing with her dog," and that Vicodin also helps her pain. (R. 640). The ALJ commented that Plaintiff testified that psychiatric medications are not effective, but, on the other hand, she has also reported good medication efficacy. (R. 640-41). Finally, the ALJ found Plaintiff's activities of daily living to be inconsistent with her disability allegations. The ALJ noted that Plaintiff has reported being independent in her activities of daily living, namely, that she "is able to care for her children and assist them with their homework. She is independent in her personal care, prepares meals, does household chores and laundry, washes dishes, drives, shops, and manages her finances." (R. 641). Furthermore, the ALJ found it to be worth noting that, despite her claims of disabling pain, Plaintiff "reported a fall while mowing the lawn in May 2012, and in September 2012 she reported mowing an acre of ground with a push mower." (R. 641).

Thus, the ALJ found, after careful consideration of all of the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons he provides in his decision. (R. 640). Therefore, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective complaints because he thoroughly reviewed them in accordance with the regulations, and he provided sufficient explanation as to why he found Plaintiff's allegations to be not entirely credible.

Finally, the Court finds no merit in Plaintiff's argument that—because the ALJ allegedly failed to include all the limitations supported by the record in his RFC—the hypothetical question to the VE was incomplete. In fact, the hypothetical question to the VE must accurately portray the claimant's impairments, but such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC. (R. 680-81).

As discussed, supra, the ALJ accounted for the limitations supported by the record when he asked the VE to assume an individual of Plaintiff's age, education and work experience who can lift and carry 10 pounds occasionally; can stand or walk for 2 hours of an 8-hour workday, and sit for 6 hours of an 8-hour workday with a sit/stand option every 30 minutes; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; can occasionally push or pull with the bilateral lower and upper extremities; can frequently handle and finger with the bilateral upper extremities; must avoid concentrated exposure to extreme heat, extreme cold and humidity, and all exposure to heights and moving machinery; is able to perform simple, routine repetitive tasks; requires low-stress work defined as occasional, simple decision-making and occasional changes in the work setting; cannot perform in a fast-paced production environment; and can have occasional interaction with co-workers and supervisors, and no interaction with the public. (R. 680-81).

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion Summary Judgment (Doc. no. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. no. 14) is GRANTED.

                                                                                                 s/Alan N. Bloch
                                                                                    United States District Judge

ecf:         Counsel of record

---

Considering these limitations, the VE testified that such an individual could perform jobs that exist in significant numbers in the national economy, including document specialist, surveillance system monitor, and addresser and sorter. (R. 681). Thus, the Court finds that the ALJ relied upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record. The Court concludes, therefore, that the ALJ's Step 5 determination is supported by substantial evidence.

      As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that she has failed to establish how the ALJ's failure to consider properly any additional evidence of record constituted reversible error.

      In sum, the ALJ addressed all relevant evidence in the record, including full consideration of the opinion evidence, and he thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's reasons for not giving controlling weight to various opinions in the record, as well as his decision to give greater weight to other opinion evidence in reaching his final determination. Additionally, the Court finds that the ALJ did not err in assessing Plaintiff's credibility, nor did the ALJ err in posing his hypothetical question to the VE. Accordingly, the Court affirms.